# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GOLDEN BEAR INSURANCE COMPANY, | : | Civil No. 1:23-CV-02080 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| GEORGE KALDES, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## <u>MEMORANDUM</u>

This lawsuit concerns the amount of insurance coverage available to Kaldes Inc. (d/b/a Al's Café), George Kaldes, and Photini Kaldes (collectively "Defendants") with respect to a state-court lawsuit that arose from a fatal shooting at Al's Café. Specifically, the parties dispute whether assault-and-battery provisions in an insurance policy issued by Golden Bear Insurance Company ("Golden Bear") limit the amount of coverage available to Defendants. Presently before the court is Golden Bear's motion for judgment on the pleadings, which asks the court to enter a declaratory judgment that the state-court lawsuit triggers the assault-and-battery provisions. For the reasons set forth below, the court will grant Golden Bear's motion.

## FACTUAL BACKGROUND AND PROCEDURAL POSTURE

### A. Underlying Lawsuit

The origin of this insurance dispute is found in the state-court lawsuit filed in the Dauphin County Court of Common Pleas by James Bey and Esther Sinkler, co-administrators of decedent Jamie Bey's estate ("Underlying Lawsuit").[1]  (Doc. 1-2.)  The Underlying Lawsuit's facts are taken from what Golden Bear avers is the operative complaint in that suit.  (Doc. 1, ¶ 10.)

On October 25, 2021, Jamie Bey was at Al's Café with family to celebrate a birthday party.  (Doc. 1-2, ¶ 16.)  Two other individuals present at the time were Damien Barber ("Barber") and Cory Brown ("Brown").  (*Id.* ¶¶ 32–33.)  Both allegedly possessed handguns and were visibly intoxicated.  (*Id.* ¶¶ 37, 39, 40–41.)  At some point, Barber and Brown began fighting each other.  (*Id.* ¶ 44.)  During the melee, Barber and Brown wrestled each other to the ground, knocking over chairs and patrons in the process.  (*Id.* ¶ 45.)  One of the fighters brandished his firearm while they were on the ground, and they both struggled to gain control over it.  (*Id.* ¶ 46.)  During this struggle, the firearm discharged multiple times.  (*Id.*)  Tragically, Jamie Bey was struck by a stray bullet as she attempted to flee Al's Café.  (*Id.* ¶ 47.)  Her wounds proved fatal.  (*Id.* ¶ 49.)

---

[1] The Underlying Lawsuit is captioned *Bey, et al. v. Kaldes, et al.* and is docketed at number 2023 CV 2959.  (Doc. 1-2.)

The Underlying Lawsuit ensued.  The co-administrators of Jamie Bey's estate contend that Defendants' negligence caused the decedent's death.  The operative complaint alleges that Defendants are responsible for dozens of negligent acts or omissions including, but not limited to, "failing to offer adequate security measures," "failing to appropriately monitor the premises," failing to have adequate policies and procedures relevant to patron safety, and failing to hire sufficient security personnel.  (*Id.* ¶ 91.)  Based on this theory of liability, the Underlying-Lawsuit plaintiffs alleged the following causes of action against Defendants: (1) "negligence and negligent security"; (2) wrongful death; and (3) dram shop liability.  (*Id.* ¶¶ 82–107, 130–39, 142–65.)  Those plaintiffs also seek to obtain punitive damages and to pierce Kaldes, Inc.'s corporate veil to hold George and Photini Kaldes personally responsible for the alleged torts.  (*Id.* ¶¶ 119–29, 178–89.)

**B. Instant Lawsuit**

Golden Bear issued to Kaldes, Inc. a liquor liability insurance policy bearing policy number "GLL 200058-00" and covering the period of June 25, 2021 to June 25, 2022 (the "Policy").  (Doc. 1-3, p. 2.) [2]  The Policy obligates Golden Bear to "pay those sums that the insured becomes legally obligated to pay as damages because of 'injury' to which this insurance applies if liability for such 'injury' is

---

[2] For ease of reference, the court uses the page numbers from the CM/ECF header.

imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage." (*Id.* at 10.)  The Policy also affirms that Golden Bear has "the right and duty to defend the insured against any 'suit' seeking damages," except for suits seeking damages for an "injury to which this insurance does not apply." (*Id.*)  The Policy has a coverage limit of $500,000 for each "Common Cause" and an aggregate limit of $1,000,000.  (*Id.* at 2.)

The Policy contains two relevant assault-and-battery provisions.  The first is titled "EXCLUSION-ASSAULT & BATTERY" ("Assault-and-Battery Exclusion" or "Exclusion").  (*Id.* at 18.)  The exclusion reads, in relevant part:

> This insurance does not apply to claims or "suits" to recover damages for "bodily injury," or "property damage," "personal and advertising injury," or medical payments arising from any of the following acts, allegations, or causes of action:
>
> 1. Assault;
>
> 2. Battery;
>
> 3. Harmful or offensive contact between or among two or more persons;
>
> 4. Apprehension of harmful or offensive contact between or among two or more persons;
>
> 5. Threats by words or deeds;
>
> 6. Unlawful restraint or false imprisonment;
>
> 7. Negligent hiring or retention of any employee resulting in or pertaining to any act or allegation of any act identified in 1-6 above;
>
> 8. Failure to supervise or train any employee resulting in or pertaining to any act or allegation of any act identified in 1-6 above;

9. Negligent entrustment resulting in or pertaining to any act or allegation of any act identified in 1-6 above;

10. Negligent rescue in the aiding or failing to aid any person from any act or allegation of any act identified in 1-6 above, even if the rescue was an independent cause of harm or alleged to be;

11. Negligent maintenance of the premises resulting in or pertaining to any act or allegation of any act identified in 1-6 above;

12. Any actual or alleged failure to prevent, halt, or bar any act identified in 1-6 above, or

13. Indemnity for any act identified in 1-6 above.

The above acts, allegations, or causes of action shall not be deemed an "occurrence" and we have no duty to defend or indemnify an insured regardless of the degree of culpability or intent and without regard to:

. . . .

2. The intent or culpability of an insured, an employee, or "third party";

*Id.*

The second relevant assault-and-battery provision is an endorsement titled "LIMITED ASSAULT & BATTERY COVERAGE" ("Assault-and-Battery Endorsement" or "Endorsement"). (*Id.* at 22.) The Endorsement reinstates limited coverage when the Assault-and-Battery Exclusion would otherwise eliminate it. (*Id.*) This limited coverage amounts to $25,000 for each "Common Cause" and $50,000 in aggregate when multiple Common Causes are involved. (*Id.*)

Golden Bear filed the instant lawsuit, seeking a declaration that these assault-and-battery provisions limit Defendants' coverage for the Underlying

Lawsuit to $25,000.  (Doc. 1, ¶¶ 36–47.)  On August 13, 2024, Golden Bear filed a

motion for judgment on the pleadings and a brief in support.  (Docs. 22 & 23.)

Defendants responded with a brief in opposition on August 28, 2024.[3]  (Doc. 24.)

Golden Bear timely filed a reply brief on September 11, 2024.  (Doc. 25.)  Golden

Bear's motion is ripe for review.

## JURISDICTION

This declaratory judgment action is a dispute between citizens of different

states and involves an amount in controversy exceeding $75,000.  Thus, the court

has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332 and 2201.  Venue is

proper pursuant to 28 U.S.C. § 1391.

## STANDARD OF REVIEW

A motion for judgment on the pleadings is the procedural hybrid of a motion

to dismiss and a motion for summary judgment.  *Westport Ins. Corp. v. Black,

Davis, & Shue Agency, Inc.*, 513 F. Supp. 2d 157, 162 (M.D. Pa. 2007).  Federal

Rule of Civil Procedure 12(c) provides: "[a]fter the pleadings are closed–but early

enough not to delay trial–a party may move for judgment on the pleadings."  Fed.

R. Civ. P. 12(c).  Under Rule 12(c), judgment should be granted where the movant

clearly establishes no material issue of fact exists, and they are entitled to judgment

---

[3] Golden Bear correctly points out that Defendants' brief in opposition was filed one day late under Local Rule 7.6.  Under these circumstances, the court will not strike Defendants' opposition brief.  While the court does not excuse Defendants' violation of the Local Rules, considering all arguments submitted aids the court in resolving this motion.

as a matter of law. *Inst. for Sci. Info., Inc. v. Gordon & Breach Sci. Publishers, Inc.*, 931 F.2d 1002, 1004 (3d Cir. 1991) (citing *Soc'y Hill Civic Ass'n v. Harris*, 632 F.2d 1045, 1054 (3d Cir. 1980); 5C Charles A. Wright & Arthur R. Miller, Fed. Practice and Procedure, § 1367, at 205 (3d ed. 2004)); *see also Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290 (3d Cir.1988) (quoting *Soc'y Hill Civic Ass'n*, 632 F.2d at 1054). A court deciding a motion under Rule 12(c) "must 'view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the non-moving party.'" *Green v. Fund Asset Mgmt., L.P.*, 245 F.3d 214, 220 (3d Cir. 2001) (quoting *Inst. for Sci. Info.*, 931 F.2d at 1004).

## DISCUSSION

### A. Jurisdiction under the Declaratory Judgment Act

As a threshold matter, the court must determine whether it should exercise jurisdiction over this lawsuit. Defendants contend that the court should decline to do so primarily for reasons of judicial economy.[4] (*See* Doc. 24, pp. 4–6.) Defendants' argument, however, is unpersuasive.

The Declaratory Judgment Act states that "any court of the United States . . . *may* declare the rights and other legal relations of any interested party." *Reifer v.*

---

[4] Defendants also ask the court to remand this case to state court. Yet, this case was never removed from state court, and Defendants cite no authority to suggest the court has the power to remand such a case. The court need not consider this issue, because it will exercise jurisdiction over this lawsuit.

*Westport Ins. Corp.*, 751 F.3d 129, 139 (3d Cir. 2014) (quoting 28 U.S.C. § 2201). It is well settled that district courts are under no obligation to exercise jurisdiction under the Declaratory Judgment Act, "even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 283 (1995); *accord Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942). This "unique and substantial discretion," *Wilton*, 515 U.S. at 286, represents "an exception to the general rule that 'federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress.'" *Reifer*, 751 F.3d at 134 (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996)). The court's discretion is generally governed by "considerations of practicality and wise judicial administration." *Reifer*, 751 F.3d at 139 (quoting *Wilton*, 515 U.S. at 288).

The *Reifer* court provided an analytical framework for determining whether to exercise jurisdiction under the Declaratory Judgment Act. *See id.* at 144–47. Under *Reifer*, the principal consideration is the existence of a pending parallel state proceeding. *See id.* at 144–45. While not dispositive, "the absence of pending parallel state proceedings militates significantly in favor of exercising jurisdiction." In other words, "the absence of a pending state case create[s] a rebuttable presumption in favor of jurisdiction." *Rarick v. Federated Serv. Ins. Co.*, 852 F.3d 223, 226 (3d Cir. 2017). Conversely, "[t]he existence of pending

parallel state proceedings militates significantly in favor of declining jurisdiction."
*Reifer*, 751 F.3d at 144–45.

Moreover, *Reifer* supplies the following non-exhaustive list of factors for courts to consider:

> (1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;
>
> (2) the convenience of the parties;
>
> (3) the public interest in settlement of the uncertainty of obligation;
>
> (4) the availability and relative convenience of other remedies;
>
> (5) a general policy of restraint when the same issues are pending in a state court;
>
> (6) avoidance of duplicative litigation;
>
> (7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for *res judicata;* and
>
> (8) (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.

751 F.3d at 146.

### 1. No Parallel State Proceeding Exists

To be a parallel state proceeding, the state action must "involv[e] the same parties and present[] [the] opportunity for ventilation of the same state law issues." *See Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274, 284 (3d Cir. 2017) (quoting

*Wilton*, 515 U.S. at 283). For instance, the *Kelly* court found that a state tort action was not a parallel state proceeding to a federal declaratory action that concerned an insurer's obligations with respect to the state action, because the insurer was not a party to the state action and the question of the insurer's obligations was distinct from the question of tort liability. *Id.* at 287. Following *Kelly*, courts in this circuit have consistently found that state tort actions are not parallel state proceedings to an insurer's federal declaratory judgment action when the insurer is a non-party to the state action. *See, e.g.*, *Westfield Ins. Co. v. Arnold*, No. 1:23-cv-00784, 2023 WL 4977765, at *3 (M.D. Pa. Aug. 3, 2023) (explaining there is a "*per se* presumption that an insurer's declaratory judgment action is distinct from underlying tort actions in state court where the insurer is a non-party"); *State Farm Mut. Auto. Ins. Co. v. Dabbene*, 511 F. Supp. 3d 600, 614 (E.D. Pa. 2021); *Hosp. Ins. Co. v. Carley's Neighborhood Bar & Grille, LLC*, No. 1:18-cv-1090, 2019 WL 1952704, at *5 (M.D. Pa. May 2, 2019).

Based on this authority, it is beyond doubt that the Underlying Lawsuit is not a parallel state proceeding. Golden Bear is not a party to the Underlying Lawsuit. Moreover, the issue of Defendants' tort liability is wholly distinct from the issue of Golden Bear's obligations under the Policy. Accordingly, there is no parallel state proceeding. This weighs substantially in favor of the court exercising jurisdiction. *See Reifer*, 751 F.3d at 144.

## 2. *Reifer* Factors

The court will address *Reifer's* eight factors, even though Defendants and Golden Bear did not meaningfully address the factors in their briefing. Defendants simply argue that judicial economy and the avoidance of duplicative litigation necessitate abstention here. (Doc. 24, p. 6.) The circumstances of this case do not support Defendant's argument.

### i. The likelihood that a declaration will resolve uncertainty of obligation

The first factor considers "the likelihood a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy." *Reifer*, 751 F.3d at 146. The core inquiry under this factor is "whether a declaration would bring about a complete termination of the controversy between the parties and thereby avoid duplicative, piecemeal litigation." *DiAnoia's Eatery, LLC v. Motorists Mut. Ins. Co.*, 10 F.4th 192, 205 (3d Cir. 2021) (internal quotations omitted). This factor weighs in favor of exercising jurisdiction, because a declaration would entirely resolve the uncertainty of Golden Bear's obligations under the Policy. *See, e.g.*, *Dabbene*, 511 F. Supp. 3d at 614 ("[A] declaration by this Court will resolve the uncertainty between [the insurer] and [the insured] concerning the scope of the policy's coverage."); *Carley's Neighborhood Bar & Grille, LLC*, 2019 WL 1952704, at *5 (finding that a declaration would resolve uncertainty about an insurer's obligations to defend and indemnify the insured).

### ii.  The convenience of the parties

The second factor considers the convenience of the parties.  Clearly, Golden Bear would not be inconvenienced by litigating in the forum it chose.  *See Arnold*, 2023 WL 4977765, at *4.  As for Defendants, no inconvenience would befall them, given they are residents of Pennsylvania, Doc. 1 ¶¶ 3–4, and are currently litigating the Underlying Lawsuit in Dauphin County.  *See Carley's Neighborhood Bar & Grille, LLC*, 2019 WL 1952704, at *6 (finding no inconvenience existed when the defendants were residents of Pennsylvania and the state action was pending in a court located within the Middle District of Pennsylvania).  Accordingly, this factor weighs in favor of exercising jurisdiction.

### iii. The public interest in resolving the uncertainty of obligation

The third factors considers public interests in resolving the uncertainty.  The parties have not identified any public interests.  And, courts have generally found that this factor neither weighs in favor nor against exercising jurisdiction in ordinary, private insurance disputes like the one at bar.  *Arnold*, 2023 WL 4977765, at *4; *Dabbene*, 511 F. Supp. 3d at 614; *Carley's Neighborhood Bar & Grille, LLC*, 2019 WL 1952704, at *6.  Accordingly, this factor is neutral.

### iv. The availability and relative convenience of other remedies

The fourth factor considers the availability and relative convenience of other remedies. The Underlying Lawsuit provides no opportunity for Golden Bear to seek any remedy, because it is not a party to that suit. *See Carley's Neighborhood Bar & Grille, LLC*, 2019 WL 1952704, at *6 (finding no remedy was available to an insurer when it was a non-party to the underlying state lawsuit). Besides this lawsuit, Golden Bear's only other prospect to obtain any remedy would be through a new state-court action. *See Dabbene*, 511 F. Supp. 3d at 614. "Because this action already exists, it is arguably more convenient for the parties to litigate their insurance coverage dispute in this federal forum, rather than start anew in state court." *Id.* (quoting *Landmark Am. Ins. Co. v. Mandracchia*, No. 18-cv-4949, 2019 WL 3934913, at *3 (E.D. Pa. Aug. 19, 2019)). This factor weighs in favor of exercising jurisdiction.

### v. Restraint when the same issues are pending in a state court and the avoidance of duplicative litigation

The concerns addressed by the fifth and sixth factors—which respectively urge restraint when the same issues are pending in state court and there is a need to avoid duplicative litigation—are not present when there is no parallel state proceeding. *See Arnold*, 2023 WL 4977765, at *4; *Carley's Neighborhood Bar & Grille, LLC*, 2019 WL 1952704, at *6; *see also DiAnoia's Eatery, LLC*, 10 F.4th at

206 (explaining that the fifth factor "is applicable only when the 'same issues' are pending in state court between the same parties").  Since there is no parallel state proceeding here, these factors weigh in favor of exercising jurisdiction.

### vi. Use of the declaratory action as a method of procedural fencing

The seventh factor considers whether the parties are using the declaratory action "as a method of procedural fencing or as a means to provide another forum in a race for *res judicata*."  *Reifer*, 751 F.3d at 146.  There is no risk of such procedural gamesmanship here, because there is no parallel state proceeding.  *See Arnold*, 2023 WL 4977765, at *5; *Carley's Neighborhood Bar & Grille, LLC*, 2019 WL 1952704, at *6.  Thus, this factor weighs in favor of asserting jurisdiction.

### vii.    Conflict of interest in the insurance context

The eighth factor recognizes the "inherent conflict of interest" that exists when an insurer has a "duty to defend in a state court and attempt[s] to characterize that suit in federal court as falling within the scope of a policy exclusion."  *Reifer*, 751 F.3d at 146.  The risk of a such a conflict is most clear and present when "the same factual question lies at the heart of both an insurance coverage dispute and the underlying tort action."  *Terra Nova Ins. Co. v. 900 Bar, Inc.*, 887 F.2d 1213, 1225 (3d Cir. 1989) (internal quotations omitted).  Conversely, such a conflict of interest is diminished when the federal action presents no risk of establishing facts

14

that prejudice the insured in the underling state lawsuit. *Dabbene*, 511 F. Supp. 3d at 615; *Mandracchia*, 2019 WL 3934913, at *4. The court can resolve this action without establishing any facts that will prejudice Defendants in the Underlying Lawsuit. Accordingly, this factor weighs in favor of exercising jurisdiction.

In sum, no parallel state proceeding exists and none of the *Reifer* factors counsel the court to abstain from exercising jurisdiction over this matter. Accordingly, the court will exercise such jurisdiction.

### B. Golden Bear's Obligations under the Policy

There is no dispute that Pennsylvania law governs the merits of this action. Under Pennsylvania law, it is the court's province to interpret insurance policies. *Sphere Drake, P.L.C. v. 101 Variety, Inc.*, 35 F. Supp. 2d 421, 427 (E.D. Pa. 1999). In doing so, courts "are guided by the polestar principle that insurance policies are contracts between an insurer and a policyholder." *Kahn v. Pa. Nat'l Mut. Cas. Ins. Co.*, 517 F. Supp. 3d 315, 320–21 (M.D. Pa. 2021) (quoting *Kurach v. Truck Ins. Exch.*, 235 A.3d 1106, 1116 (Pa. 2020). Therefore, "traditional principles of contract interpretation" steer the court "in ascertaining the [policy's] meaning." *Kurach*, 235 A.3d at 1116. The court "must ascertain and give effect to the parties' intent as manifested in the terms of the policy." *Nautilus Ins. Co. v. Motel Mgmt. Servs., Inc.*, 781 F. App'x 57, 59 (3d Cir. 2019); *accord Kurach*, 235 A.3d at 1116. Contractual terms that are clear and unambiguous are given their plain,

15

ordinary meaning. *Kurach*, 235 A.3d at 1116; *see also Nautilus Ins. Co*, 781 F. App'x at 59; *Meyer v. CUNA Mut. Ins. Soc'y*, 648 F.3d 154, 163 (3d. Cir. 2011). Ambiguous contractual terms—*i.e.*, those "subject to more than one reasonable interpretation when applied to a particular set of facts"—are construed in the insured's favor. *Kurach*, 235 A.3d at 1116 (quoting *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999); *accord Nautilus Ins. Co.*, 781 F. App'x at 59; *Kahn*, 517 F. Supp. 3d at 321.

Whether an insurance policy covers a claim against the insured is discerned "by comparing the four corners of the insurance contract to the four corners of the complaint." *Post v. St. Paul Travelers Ins. Co.*, 691 F.3d 500, 517 (3d Cir. 2012) (quoting *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr.*, Inc., 2 A.3d 526, 541 (Pa. 2010)). An insurer's duties under the policy are triggered when the "complaint alleges potentially covered injuries." *Nautilus Ins. Co.*, 781 F. App'x at 59. The complaint's allegations are "taken as true and construed liberally." *Sphere Drake, P.L.C*, 35 F. Supp. 2d at 427. When as insurer relies on an exclusion to deny coverage, the insurer bears the burden of establishing the exclusion's applicability. *Nautilus Ins. Co.*, 781 F. App'x at 59.

### 1. The Assault-and-Battery Exclusion Applies to the Underlying Lawsuit

The focal point of the parties' disagreement is the significance of the fact that that the fatal shooting of Jamie Bey appears to have been unintentional.

Golden Bear contends that the Assault-and-Battery Exclusion makes clear that it is irrelevant whether the shooting was intentional.  (Doc. 23, pp. 9–11.)  Conversely, Defendants argue that the unintentional nature of the shooting makes the Exclusion inapplicable.  (Doc. 24, pp. 3–4.)  Defendants are wrong.

The Assault-and-Battery Exclusion applies to, *inter alia*, "claims or 'suits' to recover for 'bodily injury,'. . . arising from" two categories of "acts, allegations, or causes of action."[5]  (Doc. 1-3, p. 18.)  The first category consists of: (1) "Assault"; (2) "Battery"; (3) "Harmful or offensive contact between or among two or more persons"; (4) "Apprehension of harmful or offensive contact between or among two or more persons"; (5) "Threats by words or deeds"; and (6) "Unlawful restraint or false imprisonment."  (*Id.*)  The second category consists of various negligent actions or omissions that result in the occurrence of one of the acts in the first category.  (*Id.*)  Among this second category is also a catch-all provision, covering "[a]ny actual or alleged failure to prevent, halt, or bar any" of the six acts in the first category.  (*Id.*)  The Exclusion also states that it applies with respect to the enumerated acts, allegations, or causes of action "regardless of the degree of

---

[5] The term "arising from" is interpreted to require "but for" causation; thus, the "acts, allegations, or causes of action" must be the "but for" cause of the claim or suit for the Exclusion to apply. *Nautilus Ins. Co.*, 781 F. App'x at 60.

17

culpability or intent and without regard to . . . the intent or culpability of the insured, an employee, or a 'third party.'"[6]  (*Id.*)

In arguing that only intentional acts fall within the Exclusion's purview, Defendants myopically focus on whether the Underlying Lawsuit arises from an "Assault" or a "Battery."  It is true that only intentional acts can give rise to those torts.  *See, e.g.*, *Martin-McFarlane v. City of Phila.*, 299 F. Supp. 3d 658, 671 (E.D. Pa. 2017) (defining "battery" as "an intentional harmful or offensive contact with the person of another" and "assault" as "an act intended to put another person in reasonable apprehension of an immediate battery, and which succeeds in causing an apprehension of such battery").  It is also true that the allegations in the Underlying Lawsuit do not definitively establish that the shooting constituted an assault or a battery on Jamie Bey.  The operative complaint states that two patrons at Al's Café began fighting, during which they ended up wrestling on the ground and grappling for a gun that one of them brandished.  (Doc. 1-2, ¶¶ 44–46.)  It was during the ensuing struggle for control of the firearm that it was discharged.  (*Id.* ¶ 46.)  These facts do not suggest that the firearm was intentionally fired at Jamie Bey.

---

[6] "Third party" is defined as "agents, independent contractors, sub-contractors, patrons, customers, lessors or lessees, security personnel, or any other persons lawfully or unlawfully on the insured's designated premise."  (Doc. 1-3, p. 19.)

Yet, Defendants ignore the rest of the Exclusion's language. It also applies to claims or suits that arise from "[h]armful or offensive contact between or among two or more persons" or "[a]pprehension of harmful or offensive contact between or among two or more persons . . . *without regard to . . . [t]he intent or culpability* of the insured, an employee, or a 'third party.'" (Doc. 1-3, p. 18) (emphasis added). Although closely tracking the definitions of battery and assault, the language plainly does not require an intentional act. Any harmful or offensive contact or apprehension of the same trigger the Exclusion.

There is no doubt that the fatal shooting of Jamie Bey constituted a "harmful or offensive contact" that directly gave rise to the Underlying Lawsuit. Defendants' negligence is alleged to have caused that harmful or offensive contact. Whether the shooter acted intentionally or not is immaterial based on the plain, unambiguous language of the insurance contract. Therefore, the claims against Defendants fall squarely within the unambiguous terms of the Exclusion.

Courts interpreting similar assault-and-battery exclusions in comparable contexts have reached the same conclusion. For instance, in *First Oak Brook Corp. Syndicate v. Comly Holding Corp.*, employees of a bar injured a man by negligently shoving other patrons into him. 93 F.3d 92, 93 (3d Cir. 1996). The injured man sued the owner of the bar in Pennsylvania state court. *Id.* The

owner's insurer then sought a declaration in federal court that the relevant assault-and-battery exclusion applied to the state-court case.  *See id.* at 94.

The assault-and-battery exclusion in *Comly* applied with respect to "actions and proceedings . . . arising from" both "assault" and "battery" as well as from "[h]armful or offensive contact between or among two or more persons" and "[a]pprehension of harmful or offensive contact between or among two or more persons."  *Id.*  The exclusion also stated that it applied with the respect to the enumerated actions "[r]egardless of degree of culpability or intent."  *Id.*  The Third Circuit held that this language meant that it did not matter whether the man's injuries resulted from an intentional act.  *See id.* at 96.  The injured man's tort claims arose from a "harmful contact"; that was sufficient for the *Comly* exclusion to apply.  *See id.*

In attempting to distinguish *Comly*, Defendants back off their position that the Exclusion applies only to intentional acts.[7]  Under Defendant's revised theory, "the action that caused the harm must have been intentional or at least negligent and cannot be [sic] merely accidental."  (Doc. 24, p. 3.)  Defendants argue that *Comly* is inapposite because the shove that led to the injuries in *Comly* was "intentional, or at least negligent," whereas the shooting in Al's Café was "an

---

[7] Defendants erroneously refer to *Comly* as "*Rowan*," which appears to be a misspelled reference to Thomas Rowen, the plaintiff in the underlying state-court case in *Comly*.

accident." (*Id.* at 4.) Defendants' attempt to distinguish the present case from *Comly* is unavailing.

Defendants fail to point to any policy language that supports their position. Instead, both the *Comly* exclusion and the Policy's Exclusion explicitly apply to any harmful or offensive contact regardless of intent or culpability. The language is plain. It wouldn't matter if the shooting were purely accidental or the result of negligence. Under *Comly*, the Assault-and-Battery Exclusion applies simply if the Underlying Lawsuit arose from "harmful or offensive contact," whether it was caused intentionally, negligently, or accidentally.

The court in *First Oak Brook Corp. Syndicate v. Ultimate Sports Bar, Inc.* reached the same conclusion as the *Comly* court. No. CIV. A. 94-4395, 1996 WL 202881 (E.D. Pa. Apr. 19, 1996). In that case, a bar employee negligently "came into physical contact with [a patron]." *Id.* at *1. The contact resulted in "severe bodily injury," including a left knee ligament tear. *Id.* The injured man brought a lawsuit against the bar in Pennsylvania state court. *Id.* The bar's insurer sought a declaratory judgment in federal court concerning the applicability of an assault-and-battery exclusion. *Id.*

Like *Comly*, the exclusion at issue in *Ultimate Sports Bar* was substantively identical to Defendants' Exclusion. It applied when a lawsuit arose from, *inter alia*, assault, battery, "[h]armful or offensive contact between or among two or

21

more persons," or "[a]pprehension of harmful or offensive contact between or among two or more persons" without regard to "degree of culpability or intent." *Id.* That court rejected the bar's argument that the exclusion did not apply since the contact with the injured patron was negligent, rather than intentional. *Id.* at *3. Since the contact was "harmful or offensive," the exclusion applied regardless of intent. *Id.*

Finally, the holding of *Britamco Underwriters, Inc. v. O'Hagan*, No. CIV. 94-1160, 1994 WL 477551 (E.D. Pa. Sept. 2, 1994) is in accord with those of *Comly* and *Ultimate Sports Bar*. In *O'Hagan*, a patron of a bar threw a beer bottle at another man outside the bar. *O'Hagan*, No. CIV. 94-1160, 1994 WL 477551, at *1. The blow caused the man to fall and strike his head on the cement, leading to fatal injuries. *Id.* The administratrix of the decedent's estate sued the bar and the man who threw the beer bottle. *Id.* The bar owners' insurer, in turn, sought a declaration in federal court that the assault-and-battery exclusion in the applicable policy applied to the administratrix's lawsuit. *Id.*

That assault-and-battery exclusion applied to actions arising from "Assault and Battery or any act or omission in connection with the prevention or suppression of such acts" as well as "[h]armful or offensive contact between or among two or more persons" and "[a]pprehension of harmful or offensive contact between or among two or more persons," all without regard to "culpability or

intent." *Id.* at 4.  The *O'Hagan* court determined that, based on the exclusion's language, the man's intent in throwing the beer bottle was irrelevant.  *Id.* at 5.  Whether he was acting negligently or intentionally, the beer bottle hitting the decedent was harmful or offensive contact, and that triggered the exclusion.  *Id.*

These authorities make unavoidable the conclusion that the Underlying Lawsuit falls squarely within the Assault-and-Battery Exclusion.  It does not matter if the shooting at Al's Café was intentional or not.  The fact that the shooting caused harmful or offensive contact to Jamie Bey is sufficient to trigger the Exclusion.

### 2. Defendants are Entitled to Limited Coverage under the Assault-and-Battery Endorsement

Notwithstanding the Assault-and-Battery Exclusion's applicability to the Underlying Lawsuit, Defendants are entitled to limited coverage under the plain language of the Assault-and-Battery Endorsement.  (*See* Doc. 1-3, p. 22.)  The Endorsement reinstates $25,000 of coverage for each "Common Cause" when the Assault-and-Battery Exclusion applies.  (*Id.*)  "Common Cause" is defined as "any claim, demand, or 'suit' for injuries sustained by one or more persons as a result of the providing of alcoholic beverages."  (*Id.*)  A "suit" is defined as "a civil proceeding in which damages because of 'injury' to which this insurance applies are alleged."  (*Id.* at 14.)  Based on this language, the Underlying Lawsuit constitutes one "Common Cause" for which the coverage limit is $25,000.

Defendants make no argument as to the enforceability of the Endorsement.

Therefore, the coverage available to the Defendants in the Underlying Lawsuit will

be limited to $25,000.

### CONCLUSION

For the reasons explicated above, no dispute of material facts exists and

Golden Bear is entitled to judgment as a matter of law.  Therefore, the court will

grant Golden Bear's motion for judgment on the pleadings.  An appropriate order

will issue.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: December 30, 2024